UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT L. HILL, JR.,

      Plaintiff,                    Civil Action No. 13-14803

v.                                HON.  ROBERT H. CLELAND
                                 U.S. District Judge
                                 HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL        U.S. Magistrate Judge
SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Robert Hill, Jr. ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Docket #18] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #13] be DENIED.

## PROCEDURAL HISTORY

On April 3, 2009, Plaintiff filed an application for SSI, alleging an onset date of August 13, 2007 (Tr. 227).  After the initial denial of the claim, Plaintiff timely requested an

administrative hearing, held on January 31, 2011 (Tr. 41-61). On September 13, 2011, the Appeals Council found that the Administrative Law Judge ("ALJ") erred by (1) according medical weight to the decision of a Single Decision Maker ("SDM") (2) failing to consider the opinion of a consultative medical source (3) failing to consider Plaintiff's allegations of limitation as a result of leg and hip problems and, (4) neglecting to determine whether Plaintiff's work activity after the alleged onset of disability date constituted Substantial Gainful Activity ("SGA") (Tr. 120-124).

On May 29, 2012, ALJ Paul W. Jones presided at a second administrative hearing on remand from the Appeals Council (Tr. 62). Dr. Arthur Lorber, a medical expert ("ME") testified (Tr. 67-69). Plaintiff, represented by attorney Robert Samoray, testified (Tr. 69-98), as did vocational expert ("VE") Sandra Steele (Tr. 99-104). On July 18, 2012, ALJ Jones found that Plaintiff was not disabled (Tr. 25). On September 26, 2013, the Appeals Council denied review (Tr. 1-5). Plaintiff filed for review in this Court on November 21, 2013.

## BACKGROUND FACTS

Plaintiff, born January 2, 1962, was 50 at the time of the administrative decision (Tr. 25, 227). He completed a GED and received training in floor maintenance (Tr. 247-248). He previously worked as an assembler (Tr. 244). Plaintiff's application for benefits alleges disability as a result of the inability to stand or sit longer than 30 minutes, a left heel spur, a left shoulder tumor causing finger numbness, a possible sleep disorder, and hypertension (Tr. 243).

## A.      Plaintiff's Testimony[1]

 Plaintiff offered the following testimony:

He experienced left femur pain due to problems with hardware implanted after a 1984 leg injury (Tr. 69-70).  As a result of the hardware problems, he experienced problems walking and sitting upright (Tr. 70).  Due to financial limitations, he was unable to undergo hardware removal surgery (Tr. 70-71).  He was prescribed pain medication by a nurse practitioner (Tr. 72).  Between October, 2010 and August, 2011, he sought treatment approximately four times (Tr. 74).  Since September, 2011, his treatment was limited to receiving pain medication and an examination for an unrelated condition (Tr. 74).  He was awaiting clearance for physical therapy and surgery (Tr. 74).  He took Vicodin between one and five times a day depending on his level of activity (Tr. 77-78).

Plaintiff enrolled in classes at Baker College in 2010 to 2011 (Tr. 79).  He attended classes three days a week for approximately four hours (Tr. 80).  His wife drove him to school (Tr. 80).  He quit school after two-and a-half semesters due to medication side effects and his inability to sit for extended periods (Tr. 79).

Plaintiff lived with his wife and three children (Tr. 87-88).  He stood 5' 11-1/2 and weighed 250 pounds (Tr. 89).  He was able to read, write, and perform simple calculations (Tr. 90).  He did not receive unemployment insurance or Workers' Compensation Benefits

---

[1]May 29, 2012 hearing.

(Tr. 91).  He cared for his four-year-old grandson three days a week (Tr. 92).

From 1997 through 1998, Plaintiff worked as a press operator but was unable to continue performing the job due to a heel spur (Tr. 93-94).  He later worked for about five months as a box maker (Tr. 95).  The box maker position required him to stand for long periods and lift up to 10 pounds (Tr. 96).  In 2010, he was paid approximately $3,000 by the State of Michigan for performing household chores for his mentally disabled brother (Tr. 97-98).

**B.    The ME's Testimony**

After reviewing the treating records and hearing a portion of Plaintiff's testimony, orthopedic surgeon Arthur Lorber, M.D. testified as follows:

September, 2007 and March, 2009 MRIs of the lumbar spine showed a disc bulge at L5-S1 (Tr. 82).  The MRIs were absent any indication of neurologic deficit or nerve root impingement (Tr. 82-84).  A "superficial" lipoma of the left shoulder had been removed (Tr. 83).  Plaintiff was capable of lifting 20 pounds occasionally and 10 frequently; standing or walking for up to 30 minutes at a time; and sitting for up to one hour without a break (Tr. 83).  Plaintiff was limited to occasional bending, stooping, crouching, kneeling, climbing of stairs, and the use of foot pedals (Tr. 83-84).  Plaintiff was precluded from climbing ladders, scaffolds or ropes; working at unprotected heights; balancing; and working with concentrated vibration (Tr. 83-84).  Plaintiff did not require the use of a cane (Tr. 84).

### C.    Medical Evidence

### 1. Records Related to Plaintiff's Treatment

In August, 2007, Plaintiff reported back and knee pain as a result of a recent fall (Tr. 296). A CT of the cervical spine showed degenerative spurring but otherwise unremarkable results (Tr. 298). Imaging studies of the right knee showed "mild to moderate" degenerative changes to the knee joint (Tr. 296). A September, 2007 MRI of the lumbar spine showed moderate bulging at L5-S1 but no evidence of stenosis (Tr. 294). March, 2009 examination records state that Plaintiff reported ongoing pain since injuring his back in 2007 (Tr. 284). He reported back pain radiating into his right leg (Tr. 284). Treating notes state that Plaintiff was currently taking Vicodin, Voltaren, and Flexeril (Tr. 284, 341). Plaintiff exhibited lumbar spine tenderness but no evidence or lower extremity motor limitation (Tr. 284). An MRI of the lumbar spine showed a "mild disc bulge L5-S1 with "unchanged small herniation" and the absence of any nerve root compression (Tr. 291, 348). The results were unchanged from the September, 2007 study (Tr. 290-291).

In April, 2009, Plaintiff sought emergency treatment for hematuria (Tr. 349-355). Plaintiff exhibited an appropriate demeanor and was a good historian (Tr. 350-351). The condition resolved over the course of emergency room treatment (Tr. 351-352). Imaging studies were negative for kidney stones (Tr. 338, 355). In June, 2009, Plaintiff sought emergency treatment for a leg injury (Tr. 356). Imaging studies of the left leg showed a rod implanted at the time of the 1984 injury and a well-healed fracture (Tr. 334, 359). Doppler

studies of the left leg were negative for deep venous thrombosis (Tr. 332, 366). A chest x-ray was unremarkable (Tr. 336, 368). The same month, Rosemary Tolson, D.O. observed left hip tenderness with motion but the absence of lumbar spine tenderness (Tr. 331). She noted the absence of anxiety or depression (Tr. 331).

March, 2010 emergency room notes state that Plaintiff reported groin pain (Tr. 371). He appeared fully oriented (Tr. 372-373). He admitted to daily alcohol use (Tr. 372). Imaging studies of the testicles were unremarkable (Tr. 376-377). He was discharged in stable condition (Tr. 374). In June, 2010, Plaintiff sought treatment for an injured finger (Tr. 379). An x-ray of the right hand was negative for fractures (Tr. 383). Examination notes state that his appearance was otherwise unremarkable (Tr. 379). He returned to the emergency room the following week for a left hand injury (Tr. 385).

October, 2010 emergency room notes state that Plaintiff reported pain due to the displacement of the hardware rod implanted in 1984 (Tr. 392). Emergency room records state that Plaintiff could walk "without difficulty" (Tr. 393). Imaging studies showed "[n]o evidence" of migrating hardware (Tr. 393, 400). Plaintiff also reported radiating back pain (Tr. 327). Nurse Practitioner Theresa Nestorak observed lumbar spine tenderness (Tr. 328). She advised against prolonged sitting (Tr. 328). She composed a note for Plaintiff's class instructor, recommending that Plaintiff be allowed to stand during class "to relieve left leg and back pain" (Tr. 324). Plaintiff was prescribed physical therapy in August, 2011 (Tr. 404).

-6-

## 2.Non-treating Sources

In June, 2009, Elizabeth Edmond, M.D. conducted a consultative physical examination, noting Plaintiff's report of a 1984 left femur fracture and an August, 2007 fall (Tr. 300). Dr. Edmond noted that imaging studies taken after the August, 2007 fall were mostly unremarkable (Tr. 300). Plaintiff reported ongoing knee pain as a result of the 1984 injury, adding that he coped with pain by using a hot pack and Advil (Tr. 300). He denied the current use of Vicodin, Voltaren, or Flexeril (Tr. 301). Dr. Edmond observed a full range of motion of the cervical spine and shoulders (Tr. 301). She noted reduced grip strength on the right and a restriction of range of motion of the left hip and right knee (Tr. 302). She noted possible right wrist carpal arthritis (Tr. 302). Dr. Edmond observed that Plaintiff was able to walk without a cane, adding that "[f]or distance or uneven ground, as relates to the left knee and right leg, the use of a cane in one hand or the other may be indicated to give an additional point of balance . . ." (Tr. 302). The following month, Amer Arshad, M.D. evaluated Plaintiff for shortness of breath, noting a probable diagnosis of sleep apnea (Tr. 308).

## 3. Evidence Submitted After ALJ Jones' July 18, 2012 Decision

August, 2011 imaging studies of the left shoulder were negative for fractures or dislocation with "minimal spurring" (Tr. 407). A CT of the left shoulder performed the following month showed a large subcutaneous lipoma (Tr. 409). The findings were otherwise unremarkable (Tr. 409). In February, 2012, Plaintiff sought emergency treatment

for possible symptoms of kidney stones (Tr. 411). He was discharged in stable condition (Tr. 412).

### D.     Vocational Expert Testimony

VE Sandra Steele classified Plaintiff's former work as a general production assembler as exertionally light and unskilled[2] (Tr. 100). The VE testified that a hypothetical individual of Plaintiff's age, education, and work experience who could perform exertionally light work with a sit/stand option would be capable of doing a significant range of general production assembler jobs as generally performed in the national economy (Tr. 100-101).

The VE testified further that if the same individual were also limited to standing and walking for two hours a day and sitting for six hours, occasional use of foot controls, stair climbing, kneeling, and crouching, and a preclusion on all crawling, balancing, exposure to concentrated vibration, and other hazards, the hypothetical individual could nonetheless portion a significant number of general production assembler jobs (Tr. 101). She found that the same limitations would also allow the individual to perform the jobs of packer or packager (3,500 positions in the lower peninsula of Michigan); inspector (1,600); and administrative support clerk (1,500) (Tr. 102). The VE testified that if Plaintiff's testimony

---

[2]

20 C.F.R. § 404.1567 (a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

that he was required to lie down at unpredictable intervals during the day were credited, all

competitive work would be precluded (Tr. 103-104).

### E.    The ALJ's Decision

At Step One of the sequential analysis, the ALJ found that Plaintiff's earnings since

the alleged onset of disability did not rise to the level of substantial gainful activity (Tr. 20).

Citing the medical transcript, the ALJ found at Steps Two and Three that although Plaintiff

experienced the severe impairments of "obesity, bilateral pars defect a/k/a L5-L1 bulge

without nerve root compression or spondylolithesis, left femur fracture with open reduction

internal fixation . . . and left knee degenerative joint disease with left hip pain ," none of the

conditions met or equaled an impairment listed in Appendix 1, Subpart P, Regulations No.

4 (Tr. 20-21).   He found that Plaintiff retained the Residual Functional Capacity ("RFC")

for exertionally light work within the following parameters:

> [L]ift up to 20 pounds occasionally and lift or carry up to 10 pounds
> frequently.  In an eight-hour workday, with normal breaks.  He can only
> occasionally operate bilateral foot controls.  Claimant can only occasionally
> climb ramps or stairs, stoop, kneel or crouch.  He can never climb ladders,
> ropes or scaffolds; crawl; or balance on one foot.  Claimant must avoid
> concentrated exposure to vibration and avoiding all exposure to the hazards of
> operating . . . moving machinery and unprotected heights (Tr. 22).

Citing the VE's testimony, he concluded at Step Four of the analysis that  Plaintiff was

capable of his returning to his former job of general production assembler (Tr. 24).  The ALJ

found alternatively at Step Five that Plaintiff could also work as a packer/packager,

inspector, or administrative support clerk (Tr. 24-25).

The ALJ discounted Plaintiff's allegations of limitation.  He found that Plaintiff's claim of debilitating medication side effects was undermined by the ability to complete two-and-a-half semesters of college courses (Tr. 23).  The ALJ noted that Plaintiff was able to work for over 20 years following the femur fracture (Tr. 23).  He observed that the March, 2009 MRI of the lumbar spine was unchanged from an MRI performed in September, 2007 (Tr. 23).  The ALJ noted that Plaintiff was able to care for his grandson three days a week (Tr. 24).

The ALJ rejected Dr. Edmond's June, 2009 finding that Plaintiff could require the use of a cane and experienced significant right hand limitation (Tr. 23).  The ALJ noted that Dr. Edmond was not a treating source (Tr. 23).  He accorded "great weight" to Dr. Lorber's testimony, noting that it was "consistent with record as a whole" (Tr. 23).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. § 405(g); *Sherrill v. Secretary of Health & Human Services,* 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence is more than a scintilla but less than a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)).  The standard of review is deferential

and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986) (en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).  The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health & Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. § 416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the

-11-

residual functional capacity to perform specific jobs existing in the national economy."
*Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir. 1984).

## ANALYSIS

### A.  Weight Accorded Various Medical Opinions

Plaintiff faults the ALJ for giving great weight to testifying Medical Expert Dr.
Lorber.  *Plaintiff's Brief,* 5-7, *Docket #13* (citing Tr. 21, 81-87).    Citing *Gayheart v.
Commisioner of Social Security*, 710 F.3d 365, 376 (6th Cir.2013), he argues that Dr.
Edmond's June, 2009 consultative findings outweighed Dr. Lorber's non-examining
assessment of the medical records. *Id.* at 6-7.   He also contends that the ALJ erred by failing
to discuss the findings of Nurse Practitioner Nestorak.  *Id.*

An opinion of limitation or disability by a treating source is entitled to deference. "[I]f
the opinion of the claimant's treating physician is well supported by medically acceptable
clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial
evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue,* 573
F.3d 263, 266 (6th Cir.2009); *see also Gayheart, supra*.   However, the medical transcript
in this case does not contain a treating source opinion.  Rather, the medical source evidence
is made up either consultive or non-examining evidence, or evidence by a care giver that was
not an "acceptable medical source."

Plaintiff's argument that Dr. Edmond's consultative opinion ought to have been
adopted is without merit.  Because Dr. Edmond was a one-time consultative examiner rather

than a treating source, her opinion is "entitled to no special degree of deference." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). The ALJ nonetheless explained his reasons for giving "little weight" to her findings. He noted that Dr. Edmond's finding that Plaintiff experienced significant right hand limitations was contradicted by her own observation that Plaintiff was able to perform a variety of fine manipulative activities with the right hand (Tr. 23, 305). While Dr. Edmond speculated that Plaintiff might require a cane for walking on uneven surfaces, she observed only "slight difficulty" in tandem walking (Tr. 23, 301). Plaintiff's alleged need for a cane is also undermined by later emergency room records stating that he was able to walk without difficulty (Tr. 393).

The ALJ did not err by instead adopting Dr. Lorber's finding that Plaintiff did not require the use of a cane. While Dr. Lorber's non-examining opinion is not automatically entitled the deference accorded a treating physician, it is supported by other portions of the record and thus, constitutes substantial evidence. *Atterberry v. HHS*, 871 F.2d 567, 570 (6th Cir.1989); 20 C.F.R. § 416.927(e). The ALJ noted that Dr. Lorber's opinion was based on two MRI studies showing the absence of nerve root compression (23, 283-284, 391) and emergency room records showing normal extremities and a full range of motion (Tr. 23, 349-355). The ALJ also cited treating and consultative records showing that Plaintiff was not required to take prescription pain medication for extended periods (Tr. 23). As discussed by the ALJ, Dr. Lorber's opinion is generously supported by the record as whole and is thus entitled to great weight.

-13-

Plaintiff argument that the ALJ erred by failing to "discuss the opinion" of Nurse Practitioner Nestorak is wholly without merit. *Plaintiff's Brief* at 6. First, a nurse practitioner is not an "acceptable medical source." SSR 06-3p, 2006 WL 2329939, *1-2 (2006). The deference accorded to a "treating source" opinion is limited to "acceptable medical sources" consisting of licensed physicians, "licensed or certified" psychologists, optometrists, podiatrists, and speech-language pathologists. *Id.* at *1. The ALJ was not required to give controlling weight to Nestorak's "opinion" or explain his reasons for rejecting it. *Barker*, *supra,* 40 F.3d at 794.

Second, Plaintiff is incorrect that the ALJ omitted discussion of Nestorak's treatment. While the ALJ did not mention Nestorak by name, he referred to the long-term treatment by "Center for Family Health," which was apparently the health care organization for whom Nestorak worked (Tr. 20-21, 324). The ALJ thus satisfied the requirement to consider the findings of "other sources" in making the disability determination. *See* SSR 06-3p at *4 (while nurse practitioner findings not entitled to deference, they should be "considered" along with all evidence provided by "other sources"). Finally, while Plaintiff argues that the ALJ overlooked Nestorak's "opinion," her records do not contain an opinion of limitation or disability other than her one-time statement that Plaintiff would be required to stand "during class to relieve left leg and back pain" (Tr. 324). Moreover, her statement does not mention how often Plaintiff would be required to stand, much less whether the condition would create a long-term exertional limitation. The ALJ noted that Nestorak and/or the

-14-

health care entity for which she worked provided exclusively conservative treatment for the alleged back problems (Tr. 20).   Because the ALJ's decision to accord great weight to certain sources and less to other is well supported, a remand on this basis is not warranted.

### B. The Credibility Determination

Plaintiff also argues that the credibility determination was not well supported. *Plaintiff's Brief* at 7-9.  He argues that he experienced work limitations as a result of a left shoulder lipoma.  *Id.* at 8.  He contends that the MRI studies showing a disc bulge support his claims of back and lower extremity pain.  *Id.* at 8-9.  He argues that his ability to take care of his grandson several times a week was improperly used to undermine the disability claim. *Id.* at 9.

The  credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms.   "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186,*2 (1996).  The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be

evaluated "based on a consideration of the entire case record."*Id.*[3]

The ALJ did not err in finding that Plaintiff's allegations were not credible. While Plaintiff claims work-related limitations as a result of the large left shoulder lipoma, imaging studies of the mass showed that it was wholly subcutaneous[4] (Tr. 409). While Plaintiff faults Dr. Lorber for testifying erroneously that the mass had been removed (Tr. 83), he does not explain how the fatty tumor would affect his work abilities. While he contends that the MRIs showing "disc bulge" support his claims of back pain and radiculopathy, both studies show the absence of nerve root involvement or any other condition consistent with the allegations of functional limitation.

Plaintiff asserts that his frequent emergency room visits also support his claims of

_____

[3]In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:

 (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

[4] These records were submitted after the ALJ's opinion issued (Tr. 407-413). Under the sixth sentence of 42 U.S.C. 405(g), a plaintiff must show good cause for the tardy submission of the newer records and that the records are "material" to the ALJ's determination. Plaintiff has not provided "good cause" for tardiness or shown how the newer records would be likely to change the ALJ's decision.

disabling back pain.  However, a number of the visits were made for transient medical problems such as urinary tract conditions and finger and hand injuries (Tr. 349-355, 379, 385).  The emergency visits for back-related problems provide, at best, limited support for the allegations.  June, 2009 and October, 2010 imaging studies of the left leg undermine Plaintiff's claims of pain as a result of "migrating" hardware (Tr. 356, 359, 393, 400).  Moreover, the ALJ did not err in noting that Plaintiff's sporadic work history (considered alongside the ability to care for a young grandson on a regular basis) undermined the allegations of disability (Tr. 23-24).  Because the credibility findings are well explained and well supported, the discretion generally allotted to an ALJ's credibility determination is appropriate here. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir.2007); *See also Anderson v. Bowen* 868 F.2d 921, 927 (7th Cir. 1989)(*citing Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.1986))(An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record'").

The ALJ's decision, well explained and supported, was easily within the "zone of choice" accorded the fact-finder at the administrative level.  *Mullen, supra,* 800 F.2d at 545. Therefore, I recommend that the Commissioner's decision be upheld.

### CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Docket #18] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #13] be DENIED.

-17-

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); and *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.; any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: December 8, 2014

-18-

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was sent to parties of record on December 8, 2014, electronically and/or by U.S. mail.

<u>s/Carolyn M. Ciesla</u>
Case Manager